**FILED**
**CLERK**

2/11/2026 12:25 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ANNE BUFF,

                            Plaintiff,

    -against-

THE CITY OF LONG BEACH,

                            Defendant.
------------------------------------------------------------------X
TZEMACH SHEMTOV,

                            Plaintiff,

    -against-

THE CITY OF LONG BEACH,

                            Defendant.
------------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**

Civil Action
No. 24-8260 (GRB) (JMW)

Civil Action
No. 25-223 (GRB) (JMW)

**GARY R. BROWN, United States District Judge**:

Plaintiffs Anne Buff ("Buff") and Tzemach Shemtov ("Shemtov") commenced individual

actions against the City of Long Beach ("defendant") following the seizures of their respective

vehicles by parking enforcement officers employed by defendant and towing agents who contract

with defendant.  The actions were consolidated for purposes of this motion.  Plaintiffs sue for (1)

unreasonable seizure under the Fourth Amendment and (2) deprivation of property without due

process of law under the Fourth, Fifth, and Fourteenth Amendments.  *See* 24-CV-8260 Docket

Entry ("DE") 15 ("Buff Complaint") ¶¶ 99-120; 25-CV-223 DE 17 ("Shemtov Complaint") ¶¶

92-120.  Presently before the Court is defendant's motion to dismiss plaintiffs' amended

complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated herein,

the motion is DENIED.

1

**Factual Background**

The following allegations are taken from plaintiffs' complaints.  Both plaintiffs challenge defendant's "Boot and Tow" policy, in which defendant "seizes motor vehicles for unpaid tickets, for tickets that are not yet past due and/or have not yet been adjudicated, and even simultaneously with the issuance of a single ticket."  Shemtov Complaint ¶¶ 2-3; Buff Complaint ¶¶ 2-3.  Long Beach City Code § 1, Ch. 15, Art. VI, Div. 2 authorizes defendant's parking enforcement personnel to effectuate a "spot seizure" of an illegally parked vehicle, which prevents the owner from moving the vehicle.  Shemtov Complaint ¶¶ 4-5; Buff Complaint ¶¶ 4-5.  One way defendant effectuates such seizures consists of "directing a tow truck to physically block the owner's vehicle."  Shemtov Complaint ¶ 5; Buff Complaint ¶ 5.  Once the owner returns, an employee of defendant "demand[s] immediate 'on the spot' payment of towing fees (despite the fact such vehicles have not been towed), and for payment of a just-issued never-adjudicated parking ticket."  Shemtov Complaint ¶ 6; Buff Complaint ¶ 6.

I.      *Plaintiff Anne Buff*

On July 22, 2024, Buff parked her vehicle, a 2024 Jeep Wrangler, in a parking lot owned by defendant that only permitted parking until 9 p.m.  Buff Complaint ¶¶ 69, 72.  Buff parked her car prior to 9 p.m. and returned at 9:15 p.m.  *Id.* ¶ 72.  Despite being parked in a lot 15 minutes past the allotted time, Buff's car was not impeding traffic, blocking a crosswalk, parked next to a fire hydrant, or otherwise posing a safety concern.  *Id.* ¶ 74.  Upon returning to her car, Buff noticed that an employee of defendant, SPO Santos, and an employee of a towing company had used a tow truck to physically prevent her car from moving.  *Id.* ¶¶ 77-78.

SPO Santos then informed Buff that her car would be towed unless she paid the towing agent $300 in cash for "towing charges" even though the towing agent had not linked the vehicle

or provided any towing services.  *Id.* ¶ 79.  When Buff told Santos she was not carrying cash, he advised her to go to a nearby ATM to withdraw the $300.  *Id.* ¶¶ 80-82.  Upon tendering the $300 to the towing agent, and an additional $75 to SPO Santos for a parking ticket, plaintiff left in her car.  *Id.* ¶ 82.

Buff alleges that she "had no advance notice from [defendant] that her [v]ehicle would be seized, or any opportunity for any hearing at which to challenge [defendant's] purported right to seize her [v]ehicle and deprive her of the use and possession of it, for the purpose of extracting money from her."  *Id.* ¶ 83.

II.      *Plaintiff Tzemach Shemtov*

Shemtov's allegations are similar.  On September 2, 2024, Shemtov parked his 2015 Honda Odyssey in a parking lot owned by defendant with similar timing restrictions.  Shemtov Complaint ¶ 70.  Shemtov returned to his vehicle 30 minutes after parking was no longer permitted in the lot.  *Id.*  At that time, Shemtov noticed two officers and a tow truck preventing him from moving his car.  *Id.* ¶ 71.  The officers threatened to tow the car unless they received $300 in cash.  *Id.*  Shemtov, like Buff, relinquished $300 to the towing agent and received a parking ticket.  *Id.* ¶ 72.  Shemtov then left with his vehicle.  *Id.*

Similar to Buff, Shemtov alleges that defendant did not provide an opportunity for a hearing in which he could challenge defendant's "purported right to seize the [v]ehicle and deprive him of the right to use and possess it, for the purpose of extracting money from him."  *Id.* ¶ 73.

## Discussion

I.      *Standard of Review*

3

The Court has applied the well-trodden standard, recently discussed in *Potter v. Inc. Vill. of Ocean Beach*, No. 23-CV-6456 (GRB) (ARL), 2024 WL 3344041, at *4 (E.D.N.Y. July 9, 2024), *aff'd*, No. 24-2033-CV, 2025 WL 1077405 (2d Cir. Apr. 10, 2025),[1] in deciding a defendant's motion to dismiss.  In sum, assuming the allegations of the complaint to be true and drawing inferences in favor of the plaintiffs, the factual matters asserted must be facially plausible and support the propounded claims.

II.     *Fourth Amendment Claim*

While the Fourth Amendment prohibits unreasonable seizures, "police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions."  *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019).  "[W]hether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case," such as whether the owner was present to move the vehicle or whether the vehicle was blocking traffic.  *Id.* at 731.  In *Lyle*, impoundment of the defendant's vehicle was reasonable, because "the officers could not be certain how long the rental car would be unattended in Lyle's absence … Lyle would not have been able to operate the car himself upon release due to his suspended license."  *Id.*  While the government undoubtedly has a legitimate interest in maintaining safety and traffic flow, a seizure is unreasonable when done simply to "ensure that vehicle owners pay their fines."  *Harrell v. City of New York*, 138 F.Supp.3d 479, 490 (S.D.N.Y. 2015).

From the pleadings, which are based solely on plaintiffs' allegations, the community caretaking function appears inapplicable.  While both plaintiffs were parked in a lot after permissible hours, there is no indication that either car blocked traffic or posed a safety threat.

---

[1] Unless otherwise stated, all citations omit internal citations and quotations.

4

*See* Buff Complaint ¶ 74.  Both plaintiffs were available to move their respective cars.  *See id.* ¶ 76; Shemtov Complaint ¶¶ 70-72.

The conduct of the officers and towing agents raises additional issues.  Cars blocking traffic or threatening public safety would presumably be towed immediately.  Payment of a $300 fee to the towing agents, when the vehicles were not towed, in addition to the $75 parking ticket seems incongruous.  *See* Buff Complaint ¶ 82; Shemtov Complaint ¶ 72.  Absent discovery, the Court cannot conclude that the officers and towing agents acted pursuant to a community caretaking function.

The totality of the circumstances—the towing agents physically blocking plaintiffs' cars, the lack of any safety or traffic threats from plaintiffs' violation of the parking code, the demand that each plaintiff tender $300 to the towing company (and for Buff, that she pay an unadjudicated traffic ticket)—suggest that these seizures were not reasonable and that defendant sought to "hold [] property as leverage to ensure payment of a penalty."  *Harrell*, 138 F.Supp.3d at 492.

Accordingly, plaintiffs have plausibly alleged a Fourth Amendment violation and defendant's motion to dismiss the Fourth Amendment claim is denied.

III.    *Due Process Claim*

Property "seized for the purpose of 'assert[ing] ownership and control over the property,' and not just to preserve evidence of wrongdoing" implicates not just the Fourth Amendment, but also the Fourteenth Amendment's Due Process Clause.  *Id.* (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50, 52 (1993)). The Due Process Clause requires that "individuals must receive notice and opportunity to be heard before the Government deprives them of property."  *James Daniel God Real Prop.*, 510 U.S. at 48.  While "it does not violate the

5

Due Process Clause to immediately seize property when an exception to the Fourth Amendment's warrant requirement applies," *Harrell*, 138 F.Supp.3d at 492, the government "may dispense with 'predeprivation notice and hearing … only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *El Boutary v. City of New York*, No. 18-CV-3996 (ARR)(JO), 2018 WL 6814370, at *4 (E.D.N.Y. Dec. 26, 2018).  The test in *Mathews v. Eldridge*, 424 U.S. 319 (1976) provides a baseline for determining whether pre-deprivation procedures are necessary.  Courts must weigh (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation … and probable value, if any, of additional procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 322.

From the pleadings, it appears that plaintiffs were not protected by adequate procedures prior to the seizure of their cars and the payment of the $300 towing fees to access cars that were not towed.  The *Mathews* factors weigh against granting defendant's motion.

First, individuals have important interests in maintaining their "motor vehicles" which are a "mode of transportation" and may be the driver's "most valuable possession." *Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002), *abrogated on other grounds by Culley v. Marshall*, 601 U.S. 377 (2024).  The length of the vehicle seizures is irrelevant, because "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972).  Thus, the private interest of the plaintiffs in accessing their cars was substantial.

Second, the potential risk of erroneous deprivation is concerning.  While Long Beach City Code §§ 15-212(a)-(f) allows for drivers to challenge the bases for their vehicles' towing,

there is no indication that they can challenge spot seizures.  Rather, forcing drivers to pay $300 to a towing agent—an amount four times the penalty assessed for a parking violation—represents a disproportionately high fee for work the towing company never performed.

Third, on these facts, the government's interest in enforcing traffic codes does not justify these spot seizures.  None of the practices alleged furthers interests in preventing congestion or promoting safety.

"In sum, [defendant] has cited no case, and the Court has found none, in which a federal court has ever upheld the warrantless seizure of private property in order to ensure payment of a fine, prior to any adjudication that the property owner committed any offense or that a fine is due." *Harrell*, 138 F.Supp.3d at 494.  Accordingly, plaintiffs have adequately pleaded that defendant's spot seizures violate the Due Process Clause.

<u>**Conclusion**</u>

Based on the foregoing, defendant's motion to dismiss is DENIED.

SO ORDERED.

Dated: Central Islip, New York
       February 11, 2026

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge